**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**VS.** **CIVIL ACTION NO. 3:70CV4706-DPJ-LGI**

**STATE OF MISSISSIPPI**
**(COPIAH COUNTY SCHOOL DISTRICT)** **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF JOINT MOTION**
**FOR DECLARATION OF UNITARY STATUS**

---

The Copiah County School District, (the “District”), submits this memorandum in support of its joint motion for a declaration of unitary status. The District has complied in good faith with this Court’s desegregation orders and has eliminated, to the extent practicable, all vestiges of discrimination resulting from the former racially dual system.

On September 9, 2005, the Court found that the District had satisfied its desegregation obligations and withdrew its jurisdiction over the following *Green* factors: student assignment, transportation, extracurricular activities, and facilities. 2005 Consent Decree, Ex. 1.[1] The Court retained jurisdiction over faculty and staff assignment. *Id.* The District submits it has complied with the 2005 Consent Decree for a reasonable period of time and has eliminated the vestiges of the former *de jure* system in the area of faculty and staff assignment. The District and the United States now respectfully request the Court grant its motion, declare the District unitary, dissolve all remaining injunctions entered in this case, and dismiss this case with prejudice.

---

[1] All exhibits referenced are attached to the District’s Motion for Declaration of Unitary Status, filed contemporaneously with this Memorandum.

## I. Summary of the Case

The United States (the "Government") initiated this action against the District in 1970, alleging the unlawful operation of a racially dual system of public education in violation of the Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1964. On August 11, 1970, this Court "entered a desegregation Order requiring [the District] to take certain action to eliminate racial segregation in the areas of student assignment, transportation, faculty assignment, school construction and extra-curricular activities. Subsequent orders also were entered to further desegregation." *Id.* at 1.

In 2005, after reviewing the District's compliance with its desegregation obligations, the United States concluded that the District had satisfied its obligations in the areas of student assignment, transportation, extra-curricular activities, and facilities but that the District had not satisfied its obligations as to faculty and staff assignment. *Id.* at 1–2. This Court agreed and, on September 9, 2005, entered a new Consent Order withdrawing supervision in each area of operations except for faculty and staff assignment as to which it ordered:

> A. [The District] shall assign faculty, administrators and "other staff who work directly with children" so that . . . "the ratio of Negro and white teachers in each school, and the ratio of other staff in each, are substantially the same as each such ratio is to the teachers and other staff respectively, in the entire school system," with progress being made toward that end each year[, and;]
>
> B. [The District] shall report annually to the United States the following information by October 1 of each year that this Consent Decree remains in force: 1. The number, by race and position, of staff who work directly with children at each school in the District, including teachers, administrators and counselors; and 2. The number of students, by race, enrolled in each school in the District.

*Id.* at 2–3.

The District has complied in good faith with this Court's 2005 Consent Decree for a reasonable period of time, and has, to the extent practicable, eliminated the vestiges of racial

discrimination resulting from the former racially dual system in the area of faculty and staff assignment. The Government agrees the District has satisfied its obligations in this remaining area and has joined in the District's motion for declaration of unitary status.

## II. The Copiah County School District is unitary.

### A. Burden of proof

To prevail on its motion for unitary status, the District must show that it has 1) eliminated all vestiges of *de jure* discrimination to the extent practicable; 2) complied with this Court's desegregation orders for a reasonable period of time; and, 3) demonstrated its good-faith commitment to the constitutional rights that were the original predicate for the injunctive relief this Court awarded. *Freeman v. Pitts*, 503 U.S. 467, 491 (1992); *Board of Education v. Dowell*, 498 U.S. 237, 249–50 (1991). The District must demonstrate compliance with respect to student assignment, faculty, staff, transportation, facilities, and extra-curricular activities. *Green v. County School Board of New Kent County*, 391 U.S. 430, 435 (1968).[2]

### B. The District has eliminated, to the extent practicable, all vestiges of past discrimination and has complied with the 2005 Consent Decree with respect to faculty and staff assignment.

The District has worked diligently to ensure faculty and staff who work directly with children are distributed throughout the District's schools so that the racial makeup of faculty at each school substantially approximates the racial makeup of the faculty in the District and in no way indicates that a school is intended for black students or white students. *See below*, Figure 1.

The District has consistently reported the information required under the 2005 Consent Decree and has provided additional information as requested by the Government. The court reports for school years 2022-2023, 2023-2024, and 2024-2025 are attached as cumulative

[2] As discussed above, the Court has already withdrawn supervision in the areas of student assignment, transportation, facilities, and extracurricular activities.

Exhibit 2 to the District's motion. Summarized below, the data for the last three years illustrates the District operates a unitary system and is in full compliance with *Singleton v. Jackson Municipal Separate School District.*, 419 F.2d 1211 (5th Cir. 1969).

**Figure 1: Assignment of Faculty and Staff who Work Directly with Children for School Years 2022-2023 through 2024-2025**

**2022-2023, [367]:**

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Crystal Springs Elementary | 15 (34.9%) | 28 (65.1%) | 0 | 43 |
| Crystal Springs Middle School | 36 (73.5%) | 12 (24.5%) | 1 (2%) | 49 |
| Crystal Springs High School | 29 (72.5%) | 8 (20%) | 3 (7.5%) | 40 |
| Wesson Attendance Center | 9 (11%) | 72 (87.8%) | 1 (1.2%) | 82 |
| Totals | 89 (41.6%) | 120 (56.1%) | 5 (2.3%) | 214 |

**2023-2024, [378]:**

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Crystal Springs Elementary | 16 (36.4%) | 27 (61.4%) | 1 (2.2%) | 44 |
| Crystal Springs Middle School | 33 (80.5%) | 8 (19.5%) | 0 | 41 |
| Crystal Springs High School | 30 (78.9%) | 5 (13.2%) | 3 (7.9%) | 38 |
| Wesson Attendance Center | 10 (11.6%) | 74 (86%) | 2 (2.3%) | 86 |
| Totals | 89 (42.6%) | 114 (54.5%) | 6 (2.9%) | 209 |

**2024-2025, [379]:**

| SCHOOL | BLACK | WHITE | OTHER | TOTAL |
|---|---|---|---|---|
| Crystal Springs Elementary | 15 (34.9%) | 27 (62.8%) | 1 (2.3%) | 43 |
| Crystal Springs Middle School | 26 (65%) | 12 (30%) | 2 (5%) | 40 |
| Crystal Springs High School | 31 (77.5%) | 5 (12.5%) | 4 (10%) | 40 |
| Wesson Attendance Center | 8 (9.5%) | 76 (90.5%) | 0 | 84 |
| Totals | 80 (38.6%) | 120 (58%) | 7 (3.4%) | 207 |

Faculty and staff who work directly with children apply for a position at a specific school and are hired without regard to race. The District has offered voluntary transfers to faculty and staff who work directly with children to further approximate the ratio of faculty and staff by race at each school to that of the District and has granted those transfers where requested. The District is unitary in the area of faculty and staff assignment.

## III. Conclusion

"[U]nitariness represents a finding 'that the school district has eliminated all aspects of *de jure* segregation . . . .'" *Price v. Austin Independent School District,* 945 F.2d 1307 (5th Cir. 1991) (quoting *Ross v. Houston Independent School District,* 699 F.2d 218, 219 (5th Cir. 1983)). "[T]he appropriate measure of unitariness [is] 'whether the past has been eradicated so far as it remains in the power of school officials and courts to do so . . . .'" *Id.* at 1314 (quoting *Ross*, 699. F.2d at 227). The District has worked continuously to implement the Court's desegregation orders and to remove, to the extent practicable, all vestiges of *de jure* segregation. The District has timely submitted its required reports to the Court describing its progress in complying with the 2005 Consent Decree. The District has eliminated all vestiges of *de jure* segregation and is unitary in every respect.

Wherefore, the District and the Government request this Court declare the District unitary in the remaining area of faculty and staff assignment, dissolve all remaining injunctions against the District, and dismiss this case with prejudice as to the Copiah County School District.

Respectfully submitted, this 31st day of July, 2025.

**Copiah County School District**

/s/ John S. Hooks

**The United States**

/s/ Mitzi Dease Paige

**OF COUNSEL:**

John S. Hooks
MS Bar No. 99175
Adams and Reese LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone: 601.353.3234
Facsimile: 601.355.9708
John.hooks@arlaw.com

Mitzi Dease Paige
MS Bar No. 6014
Assistant United States Attorney
Southern District of Mississippi
501 E. Court St., Suite 4.430
Jackson, MS 39201
Telephone: 601.973.2840
Mitzi.Paige@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed a true and correct copy of the above document with the Clerk of Court using the CM/ECF system, which caused notice of filing to be served on all registered counsel of record.

Dated: July 31, 2025.

/s/ John S. Hooks